money to the shipper the master is personally liable only. But there is a marked distinction between such a case and one in which the consignor has already sold the goods to the consignee upon an agreement that money is to be paid upon delivery of the goods. In such case, the contract is entirely one of affreightment. The master contracts for a certain sum to be paid as freight to transport the goods to the consignee and transport the money delivered to him by the consignee back to the consignor, or if the money is not placed upon the vessel by the consignee to re-transport the goods themselves to the shipper. The duties assumed are entirely those of a common carrier and a common carrier is as much liable for a failure to transport and deliver money received by him for transportation as he is for a failure to deliver any other character of freight. The immense commercial business now transacted in this way can only be protected by this rule, which can be applied without infringing upon any established principle of admiralty, and is fully sustained in the case of The Hardy [Case No. 6,056], decided by Judge Nelson. The claims so far as proved must therefore be allowed as liens upon the vessel.

I will next consider the exceptions offered by Pittman & Pittman and Gilland & Birchett, for libellant, and intervenors to other claims and interventions filed and set up by the counsel who represents the mortgagee. The first is that of John King, master of the vessel, for his wages as such. The rule that such a claim is not a lien upon the vessel, enforcible in rem, is too well settled to require either reason or authority to sustain it. His contract is with the owner, and only recoverable against him personally. The exception to this claim must be sustained and claim disallowed. The claim of J. B. Denny, first clerk, is also a claim for wages as such, which I am satisfied must be disposed of in the same way. The first clerk of a steamboat is the chief financial agent of the owner, employed by him and accountable to him and not to the master. He receives and disburses all moneys for the boat, pays the wages of the crew, and practically pays the master of the vessel himself his wages, and, having the money of the boat in his own hands, pays his own salary. The reason a lien is given to mariners for their wages is because they are employed by the master of the vessel, on the credit of the vessel, and would in most cases be practically without remedy if they were compelled to hunt up and sue unknown owners. The first clerk does not occupy any such position; he is the financial agent of the owner, and can at all times pay himself out of moneys in his hands, which he receives for freight and passage. I believe the office of first clerk is one unknown to the general admiralty law, according to which the master is the sole representative and agent of the owner. The same principles which exclude the master from the privileges of a mariner's lien, would also be applicable to the first clerk, and upon principle and reason in the absence of adjudicated cases, I am satisfied that first clerks of steamboats are not entitled to a lien for their wages. So the claim must be disallowed. The claim of Bazinsky & Hirsch is for money advanced in the home port, and does not rank any higher than supplies and materials, and must be disallowed. The claim of Forbes & Fitzpatrick is disallowed, because they have obtained judgment against the owner in a state court, and levied upon goods sufficient to pay the debt.

This leaves but one question to settle—the claim of the mortgagee, Bazinsky. It is insisted by his counsel, that his mortgage is a prior and higher than all others. I am satisfied that this position is not maintainable. It is not a maritime lien, but only a lien upon the vessel, subject to all maritime liens. The mortgagee is only allowed to come into court of admiralty as claimant, and occupies exactly the same position that the owner would. His mortgage, from the date of its record, gives him a lien for his mortgage debt, good against all subsequent vendees and incumbrancers, except those holding maritime liens, which are liens in rem, and without regard to the ownership of the mortgage. A vessel is only a conditional sale, and, as an absolute sale or transfer of the title cannot effect maritime liens, a conditional one cannot. To hold otherwise would destroy the credit of vessels, and hamper commerce, beyond reason, for every employé and every shipper and every passenger would have to examine the customhouse records of the home port of the vessel, before he could safely risk his services, his property, or his person upon a boat. This position is fully sustained by all the authorities. Hence the mortgagee can only claim any surplus that may remain after satisfying all of the maritime liens against the vessel.

---

## Case No. 18,219.

ZOLLINGER v. The EMMA.

[See Case No. 18,218.]

---

## Case No. 18,220.

### The ZONE.

[22 Law Rep. 725; 2 Spr. 19.] [1]

District Court, D. Massachusetts. March, 1860.

LIBEL AGAINST VESSEL—DAMAGE TO CARGO.

1. The French Code de Commerce does not differ from the general maritime law, in respect to liens on the ship for damage to the cargo.

2. On trial of a libel against a ship, to recover damage to cargo proved to have been shipped sound, and delivered damaged, the burden of accounting for such damage is on the claimants.

[1] [2 Spr. 19, contains only a partial report.]